UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUKHCHAIN S.,<br><br>    Petitioner,<br><br>    v.<br><br>MINGA WOFFORD, et al.,<br><br>    Respondents. | No. 1:25-cv-01863-TLN-DMC<br><br>**ORDER** |

This matter is before the Court on Petitioner Sukhchain S.'s ("Petitioner") Motion for a Temporary Restraining Order[1] ("TRO"). (ECF No. 1.) Respondents filed a motion to dismiss the petition.[2] (ECF No. 7.) For the reasons set forth below, Petitioner's motion is GRANTED.

---

[1]    On December 15, 2025, Petitioner filed a pro se Petition for Writ of Habeas Corpus. (ECF No. 1.) Based on the substance of Petitioner's petition and the relief requested therein, the Court liberally construed the petition as a motion for a TRO. (ECF No. 5.) *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[2]    Respondents were ordered to file an opposition to Petitioner's Motion for TRO and provide the Court with copies of all referenced/relevant portions of Petitioner's A-File and any and all available records related to Petitioner's allegations. (ECF No. 5.) The Cout notes Respondents' two-page "Motion to Dismiss Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 and Rule 4; Response to Petition for Writ of Habeas Corpus; Opposition to Preliminary Injunction; Opposition to Temporary Restraining Order" does not include copies of all referenced/relevant portions of Petitioner's A-File or any and all available records related to

### I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is a citizen and national of India who was apprehended entering the United States on June 5, 2023. (ECF No. 7 at 1.) Removal proceedings were initiated, and Petitioner was placed in the Intensive Supervision Appearance Program and released with conditions. ("ISAP"). (*Id.*) On September 9, 2025, Petitioner went to an ISAP Office to obtain permission to travel out of state. (ECF No. 1 at 5.) Upon exiting the ISAP office, Petition was detained. (*Id.*) Petitioner has a pending asylum petition. (*Id.* at 6.)

On December 15, 2025, Petitioner filed a petition for writ of habeas corpus. (ECF No. 1.) Based on the substance of Petitioner's petition and the relief requested therein, the Court construed the petition as a motion for a TRO. (ECF No. 5.)

### II. STANDARD OF LAW

For a TRO, courts consider whether Petitioner has established: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Petitioner must "make a showing on all four prongs" of the *Winter* test. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). In evaluating a petitioner's motion, a district court may weigh petitioner's showings on the *Winter* elements using a sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support issuing a TRO even where the petitioner shows that there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, Petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor in order to succeed in a request for a TRO. *Id.* at 1134–35.

///

///

---

Petitioner's allegations despite this Court's order.

**III.  ANALYSIS**

    A.    <u>Likelihood of Success on the Merits</u>

Petitioner has established a likelihood of success on his due process claim. The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. *Hernandez v. Session*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights extend to immigration proceedings. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).

As for the first step, the Court finds Petitioner has raised serious questions as to whether he has a protectable liberty interest. *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause"). For over two years, Petitioner built a life outside of detention. As this Court has found previously, along with many other courts in this district when confronted with similar circumstances, Petitioner has a clear interest in his continued freedom. *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

As to the second step – what procedures or process is due – the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including

1    the function involved and the fiscal and administrative burdens that the additional or substitute

2    procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  As set

3    forth below, the Court finds Petitioner has established his due process rights were likely violated.

4    　　　First, Petitioner has a substantial private interest in remaining free from detention.  As

5    discussed above, Petitioner has lived in the United States for over two years and has built a life

6    outside of detention.  Despite that, Petitioner has now been detained for almost three months

7    without being afforded a hearing.  Accordingly, this factor weighs in favor of finding Petitioner's

8    private interest has been impacted by his detention.  *See Manzanarez v. Bondi*, No. 1:25-CV-

9    01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

10   　　　Second, the risk of erroneous deprivation is considerable given Petitioner has not received

11   any bond or custody redetermination hearing.  "Civil immigration detention, which is nonpunitive

12   in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the

13   community." *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2617255, at

14   *4 (E.D. Cal. Sept. 9, 2025) (internal quotation and citation omitted).  The Court finds there is a

15   serious likelihood Petitioner will be erroneously deprived of his liberty interest.  Moreover,

16   without any procedural safeguards to determine whether his detention was justifiable, the

17   probative value of additional procedural safeguards is high.  *R.D.T.M.*, 2025 WL 2617255, at *4.

18   　　　Finally, the Government's interest is low, and the effort and cost required to provide

19   Petitioner with procedural safeguards are minimal.  *See Garcia v. Andrews*, No. 2:25-CV-01884-

20   TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025).  As this Court stated recently, it

21   would be less of a fiscal and administrative burden for the Government to return Petitioner home

22   to await a determination on his asylum petition than to continue to detain him.

23   　　　On balance, the Court finds the *Matthews* factors demonstrate Petitioner is entitled to due

24   process – a hearing to determine whether his detention was warranted.  Accordingly, with respect

25   to his due process claim, Petitioner has shown he is likely to succeed on the merits.[3]

---

26   [3]　　Respondents argue Petitioner's motion should be denied because Petitioner is an
27   "applicant for admission" who is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).
     Courts nationwide, including this one, have overwhelmingly rejected Respondents' argument.
28   *See e.g.*, *Hortua v. Chestnut, et al.*, No. 1:25-cv-01670-TLN-JDP, 2025 WL 3525916 (E.D. Cal.

### B. Irreparable Harm

Petitioner has also established he will suffer irreparable harm in the absence of a TRO. The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration detention," including "the economic burdens imposed on detainees and their families as a result of detention[.]" *Hernandez*, 872 F.3d at 995. Such harm is present here. Petitioner has been detained for almost three months and has been separated from his community. Even if this was not sufficient to establish irreparable harm, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

### C. Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)). The Court finds there is no equitable reason that would tip the balance in the Government's favor, because the Government faces no hardship. First, it is clear on this record that the balance of equities tips decidedly in Petitioner's favor as the Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Second, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002. Moreover, "the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (internal citation omitted).

In sum, these last two factors also weigh in Petitioner's favor. Therefore, the Court

---

Dec. 9, 2025); *Barco Mercado v. Francis*, No. 25-CV-6582 (LAK), 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) (estimating over 350 cases ruled DHS's July policy improper across 160 different judges sitting in about 50 different courts nationwide); *Mirley Adriana Bautista Pico, et al. v. Kristi Noem, et al.*, No. 25-CV-08002-JST, 2025 WL 3295382, at *2 (N.D. Cal. Nov. 26, 2025) (collecting cases); *Armando Modesto Estrada-Samayoa v. Orestes Cruz, et al.*, No. 1:25-CV-01565-EFB (HC), 2025 WL 3268280, at *4 (E.D. Cal. Nov. 24, 2025) (collecting cases). As such, the Court does not address Respondents' arguments at length here.

GRANTS Petitioner's Motion for a TRO.

### IV.  CONCLUSION

Accordingly, IT IS HEREBY ORDERED:

1. Petitioner's Motion for a Temporary Restraining Order is GRANTED;

2. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.  Courts regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011);

3. Petitioner Sukhchain S. shall be RELEASED IMMEDIATELY from Respondents' custody.  Respondents must **file a notice certifying compliance with this provision of the Court's Order by 5:00 p.m. on December 23, 2025**;

4. Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven day notice and a hearing before a neutral fact-finder where Respondents show: (a) there are material changed circumstances which demonstrate that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk.  At any such hearing, Petitioner shall be allowed to have counsel present.

5. Respondents are ordered to SHOW CAUSE why this Court should not convert this temporary restraining order into a preliminary injunction requiring Respondents to continue to abide by this Court's order.  Respondents shall file responsive papers by **Monday, December 29, 2025.**  Petitioner may file a reply, if any, by **Monday, January 5, 2025, by 12 p.m.**[4]  If the parties agree upon a less demanding briefing schedule, the Court will consider the parties' proposal.  The matter is not set for a hearing though the Court may set one should it later be determined that a hearing is necessary.

---

[4]   Respondents request further briefing deadlines be held in abeyance until the Ninth Circuit resolves the appeal in *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025).  (ECF No. 7 at 2.)  Respondents provide no authority for such a request and the Court finds the request unjustified given the potential for irreparable harm in the interim.  As such, Respondents request is DENIED.

1 |       IT IS SO ORDERED.

2 | Date: December 22, 2025

                                                  TROY L. NUNLEY
                                                  CHIEF UNITED STATES DISTRICT JUDGE